**SOHI, Appellant,**

v.

**OHIO STATE DENTAL BOARD, Appellee.**

[Cite as *Sohi v. Ohio State Dental Bd.* (1998), 130 Ohio App.3d 414.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970739.

Decided Oct. 23, 1998.

*Vorys, Sater, Seymour & Pease LLP, Paul Coval* and *Gregory D. Russell; Frank R. Recker & Assoc. Co., L.P.A., Frank R. Recker* and *Katrina L. Trimble Coffaro,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Sallie J. Debolt,* Assistant Attorney General, for appellee.

MARIANNA BROWN BETTMAN, Judge.

## PROCEDURAL POSTURE

This is an appeal brought by Parneet S. Sohi, a pediatric dentist, from the order of the court of common pleas affirming the decision of the Ohio State Dental Board suspending his license to practice dentistry for six months. In this appeal, Sohi argues that the Dental Board's proceedings against him lacked the requisite due process. To understand and decide his assignments of error, we must review the background leading to the charges and the evidence adduced at the administrative hearing.

## BACKGROUND LEADING TO CHARGES

During the spring of 1995, Victoria Bartlett, who was then the office manager at Sohi's dental practice, called the Dental Board to complain about the way Sohi

was treating his patients. This call started the investigation of Sohi.[1] Bartlett and two co-workers, Mary Morgan and Kim Bradshaw, gave sworn statements to a Dental Board investigator, alleging patient mistreatment by Sohi. Bradshaw and Morgan were dental assistants to Sohi.[2]

Bartlett's eight-page statement described Sohi applying heavy pressure with his hands over the mouth and nose of children to silence them, placing children in headlocks, choking children, applying a nitrous mask over children's faces so that it left an indentation, threatening children with needles and telling them "to shut up if they ever want to see mommy again." Bradshaw made allegations in her statement similar to those by Bartlett. Neither Bartlett's statement nor Bradshaw's statement contained any patient names. Morgan's statement did include two patient names. Because the allegations at issue involve child victims, we will refer to these patients as patient 1 and patient 2. Morgan specifically alleged that Sohi held patient 1 against the wall and shook him. Morgan alleged that Sohi allowed splattered blood to remain on the file of patient 2. This second allegation does not concern patient treatment and was not a part of the disciplinary proceedings.

As part of its investigation, the Dental Board also hired Stephen Wilson, D.D.S., to examine the statements of Bartlett and Bradshaw and to render a professional opinion on whether Sohi's reported behavior-management techniques departed from the accepted standards of the profession. Wilson found numerous departures.

R.C. 4715.30(A) sets outs the board's statutory bases for instituting disciplinary proceedings against a dentist. Under R.C. 4715.30(A)(7), the board can discipline a dentist for providing dental care that departs from the accepted standards for the profession even if no patient is injured. Based upon its investigation, the board instituted a formal disciplinary action against Sohi pursuant to R.C. 4715.30(A)(7).

There is no other information about the board's investigation in this record. Additionally, no investigator testified at the administrative hearing.

---

1. R.C. 4715.03 vests the Ohio State Dental Board with the power to administer and enforce the provisions of R.C. Chapter 4715, which addresses the licensing of dentists and hygienists. Specifically, "[t]he board shall investigate evidence which appears to show that any person has violated any provision of this chapter. Any person may report to the board under oath any information such person may have appearing to show a violation of any provision of this chapter. * * * If after the investigation the board determines that there are reasonable grounds to believe that a violation of this chapter has occurred, the board shall conduct disciplinary proceedings pursuant to Chapter 119. of the Revised Code."

2. Bradshaw worked in Sohi's office from November 1994 to January 1995; Morgan from January 1995 to March 1995.

## NOTICE OF DISCIPLINARY ACTION

On December 4, 1995, the board notified Sohi that it proposed to take disciplinary action against him involving his license to practice dentistry in Ohio. The board based its proposed action upon allegations that between November 1994 and March 1995 Sohi departed from the accepted standards of the profession by mistreating and abusing his young patients. The notice of opportunity for hearing reads as follows:

"In accordance with Chapter 119. and Chapter 4715. of the Ohio Revised Code, you are hereby notified that the Ohio State Dental Board intends to determine whether or not to warn, reprimand or otherwise discipline you or to suspend or revoke your license to practice dentistry in Ohio for one or more of the following reasons.

"COUNT 1

"Between the dates of November, 1994, and March, 1995, you have mistreated and abused children in your practice by: grabbing them by the throat and choking; placing anesthetic needle between the patient's eyes and threatening them; holding them up and shaking them; and placing the children in headlocks, and other verbal and/or physical abuse against children.

"Such conduct constitutes a violation of Section 4715.30(A) of the Ohio Revised Code, which states in relevant part: 'The holder of a certificate or license issued under this chapter is subject to disciplinary action by the state dental board for any of the following reasons: * * * (7) Providing care that departs from or fails to conform to accepted standards for the profession, whether or not injury to a patient results.'

"Pursuant to Chapter 119. Of the Ohio Revised Code, you are advised that you are entitled to a hearing on this matter. * * *"

Sohi requested a hearing and demanded more information about the charges, particularly patient names and exact dates of the alleged incidents. In February 1996, he was provided with the sworn statements of Bartlett, Morgan, and Bradshaw that were taken as part of the board's investigation. Morgan's statement included the names of patient 1 and patient 2.

After Sohi received the statements of Bartlett, Bradshaw and Morgan, he continually tried to learn the names of the other patients he allegedly had mistreated. Although Sohi provided the board with access to his files, from the record before us it appears that the board never determined the names of the other patients before the hearing.

## HEARING

The Dental Board hired Christopher B. McNeil to serve as the hearing examiner. A hearing was held on July 18, 19, and 22, 1996. The hearing examiner ordered that both sides exchange witness and exhibit lists at least one week before the hearing.

The state did not present the testimony of any patient victims or their parents. Bartlett, Bradshaw, and Morgan testified to the misconduct they witnessed. For the first time, Bartlett identified the names of three other patient victims. They were referred to as patient 3, patient 4, and patient 5. Wilson also testified as an expert. Although Wilson did testify that, to those not trained in pediatric dentistry, acceptable behavioral-management techniques can appear shocking or harmful, he did find numerous departures from acceptable practice by Sohi.

After hearing all the evidence, McNeil found that Sohi had mistreated and abused his patients. McNeil issued findings of fact and conclusions of law that separated Sohi's conduct into four categories. Specifically, he held that Sohi mistreated and abused his patients by (1) placing hypodermic needles between the eyes of the patients and threatening them, and telling them to "shut up," in conjunction with either the unacceptable use of a needle as a threatening device or the unacceptable technique of telling the child that by behaving the child's parent would be able to return to the room, (2) applying the hand-over-mouth technique in such a way as to deliberately prevent the child from breathing, (3) grabbing patients by the throat and choking them, placing them in headlocks, and restraining them with the use of his forearm under the children's throats, choking them, and (4) holding patient 1 up against the wall of the operatory and shaking him. McNeil found these cited examples of misconduct inconsistent with the acceptable standards of the profession of dentistry in Ohio and in violation of R.C. 4715.30(A)(7). Additionally, he found each of the four enumerated findings of misconduct standing alone sufficient to warrant revocation of Sohi's license to practice dentistry. Sohi filed objections to the report and recommendation.

## REVIEW BY FULL DENTAL BOARD

The Dental Board, after reviewing the transcript of the proceedings, the report and recommendation of the hearing examiner, Sohi's objections and all the posthearing motions and pleadings, adopted the report of the hearing examiner in full, but modified the discipline recommended. Instead of a permanent license revocation, the board suspended Sohi's license for six months and conditioned his reinstatement upon its receipt of documentation that he had received a mental-health evaluation and any treatment the evaluator deemed necessary. The board also placed Sohi on probation for five years, and made it a condition of probation that Sohi be accompanied by a staff member at all times when examining and

treating patients. The board's order was to become effective thirty days after its October 17, 1996 issuance date.

## APPEAL TO COMMON PLEAS COURT

Pursuant to R.C. 119.12, Sohi appealed from the Dental Board's order to the court of common pleas, and requested a stay of the board's order. The court of common pleas stayed the order of the board and ordered Sohi to refrain from rendering dental care during the stay without an employee present with him in the operatory.

After a review of the record, the trial court affirmed the order of the board. From that judgment, Sohi has filed this appeal.

## STANDARD OF REVIEW IN ADMINISTRATIVE APPEALS

In an administrative appeal under R.C. 119.12, a trial court must determine whether the decision of the administrative board is supported by reliable, probative and substantial evidence.[3] The trial court must give due deference to the administrative resolution of evidentiary conflicts and must not substitute its judgment for that of the administrative board or agency.[4] Appellate review is limited to determining whether the trial court abused its discretion in finding the board's decision supported by reliable, probative and substantial evidence.[5] Issues of law are reviewed *de novo*.[6]

## PRESENT APPEAL

## DUE PROCESS ARGUMENTS

Sohi alleges five assignments of error in this appeal. The first two assignments of error involve the following:

"First Assignment of Error: The trial court erred in finding that the Dental Board had provided to Dr. Sohi a meaningful pre-hearing notice of the charges to be heard at the scheduled disciplinary hearing as required by due process.

---

**3.** R.C. 119.12; *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303, 1305.

**4.** *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267.

**5.** *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750–751.

**6.** *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 343–344, 587 N.E.2d 835, 838–839.

"Second Assignment of Error: The trial court erred by finding that due process permitted the Dental Board to sanction Dr. Sohi for instances of alleged mistreatment,of patients never identified by the Dental Board."

These assignments of error address what process is due to a respondent in an administrative proceeding involving a professional license. They are somewhat interrelated, and we address them at the same time. As they present questions of law, we review them *de novo*.

In his first assignment of error, Sohi argues that the trial court erred in finding that the Dental Board provided him meaningful prehearing notice of the charges against him. In his second assignment of error, Sohi argues that the trial court erred in finding that he was sanctioned in accordance with due process when he was in fact sanctioned for mistreatment of patients not identified.

An administrative agency such as the Dental Board cannot revoke or suspend a professional license without safeguarding the statutory and due process rights of the respondent. Pursuant to R.C. 119.07, the Dental Board was required to provide Sohi with sufficient notice of the charges against him to allow preparation of a defense to the charges.[7] In addition, to the extent that the administrative hearing involved the deprivation of property (the revocation or suspension of a professional license),[8] the Due Process Clauses of the Ohio and U.S. Constitutions were implicated, requiring that Sohi be given "notice and opportunity for hearing appropriate to the nature of the case." [9] Procedural due process also embodies the concept of fundamental fairness.

In this case, the board's notice advised Sohi that the charge against him was "[p]roviding care that departs from or fails to conform to accepted standards for the profession, whether or not injury to a patient results." The notice stated in further detail that, between certain specified dates, he mistreated and abused children in his practice, and the notice provided specific detail about the nature of the mistreatment and abuse. However, despite all of Sohi's requests for the names of the patients involved, he was only given the names of two patients prior to the hearing. They were contained in the witness statement of Mary Morgan and were referred to at the hearing as patient 1 and patient 2. At the hearing

7. *Geroc v. Ohio Veterinary Med. Bd.* (1987), 37 Ohio App.3d 192, 199, 525 N.E.2d 501, 507; *Keaton v. State, Dept. of Commerce* (1981), 2 Ohio App.3d 480, 2 OBR 606, 442 N.E.2d 1315.

8. *Schware v. Bd. of Bar Examiners* (1957), 353 U.S. 232, 238–239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796, 801 (holding that a professional's license is a protected property interest).

9. *Mullane v. Cent. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 313, 70 S.Ct. 652, 656–657, 94 L.Ed. 865, 872–873.

itself, but not before, Bartlett identified the names of three more mistreated patients.

The board prosecuted and sanctioned Sohi for misconduct against patients never identified by name to Sohi before the hearing. To this extent, Sohi's procedural due process rights were violated, as Sohi, who saw approximately fifteen hundred patients during the period in question, was effectively denied the ability to present a defense without this crucial information.[10]

■ This holding is supported by the board's own protocol. In every other dental disciplinary case before the board involving patient care, the board had provided the names of the accusing patients in the notice to the dentist under review.[11] However, as mentioned above, Sohi was only given the names of patient 1 and patient 2 prior to the hearing. Although the allegations concerning patient 2 were ultimately not pursued by the state, Sohi did have enough information about these two patients in advance of the hearing so that his due process rights as to these patients were not violated.

Because the board's proceedings against Sohi with respect to patient 1 met the requirements of due process, the statutory violation based upon Sohi's misconduct towards patient 1 is upheld. The findings of disciplinary violations related to other patients are vacated because of the due process violations. Thus, the first and second assignments of error are sustained in part.

## OTHER ASSIGNMENTS OF ERROR

In his third assignment of error, Sohi argues that the trial court abused its discretion in affirming the board's decision when it was not supported by sufficient, credible evidence. Because of our disposition of the first two assignments of error, we limit our review of this assignment of error to the findings pertinent to patient 1.

---

10. See *State ex. rel. Sohi v. Ohio State Dental Bd.* (Oct. 24, 1996), Franklin App. No. 96APD05–687, unreported, 1996 WL 613790 (denying the board's motion to dismiss Sohi's mandamus action seeking a writ to compel the board to reveal specific information about the identity of the children allegedly mistreated by Sohi and the alleged dates of mistreatment. The writ was eventually denied, based upon the fact that the disciplinary hearing had already occurred and Sohi had an adequate remedy at law—this direct appeal. *State ex. rel. Sohi v. Ohio State Dental Bd.* [May 20, 1997], Franklin App. No. 96APD05–687, unreported, 1997 WL 275495, affirmed [1997], 80 Ohio St.3d 492, 687 N.E.2d 454). See, also, *In re Morgenstern* (May 28, 1992), Franklin App. No. 91AP–1018, unreported, 1992 WL 119880 (trial court abused its discretion in affirming the Chiropractic Board's order upon facts for which Morgenstern was not given fair notice before the hearing).

11. This information was obtained by Sohi's counsel and made a part of the record.

The board found that Sohi held patient 1 against the wall of the operatory and shook him. This finding was based upon the testimony of Mary Morgan and Victoria Bartlett. Morgan testified at the hearing that she walked into the operatory and found Sohi holding a young boy against the wall and shaking him. She immediately left the room and told Bartlett, who was working at the reception desk, what she had seen. She identified this patient as patient 1 (Sohi did have his name before the hearing) and testified that the boy's father was in the dentist's office but not in the operatory when the misconduct occurred.

Bartlett testified that she heard a child's scream followed by a thud coming from the operatory. As she got up to investigate, she ran into Morgan, who appeared to be very upset. Morgan told her that Sohi had patient 1 up against the wall. Bartlett testified also that the boy's father was in the dentist's office, but not present in the operatory with his child.

Sohi argues that Morgan's and Bartlett's testimony was not credible in light of an affidavit he submitted from the parents of patient 1. They averred that at least one of them was with their son during the entirety of each visit to Sohi's office, and that no mistreatment occurred during these visits. If we assume that this affidavit was considered,[12] the trial court must give due deference to the findings of the board with respect to conflicting testimony, and may not substitute its own judgment for the credibility determinations made by the board.[13] Simply put, our conclusion is that the hearing examiner and the board apparently believed Sohi's employees on this point.

The trial court did not abuse its discretion in finding the board's decision with regard to patient 1 to be supported by reliable, probative, and substantial evidence. Finding no abuse of discretion, we overrule the third assignment of error, limited to patient 1.[14]

In his fourth assignment of error, Sohi argues that the Dental Board had no authority to impose sanctions based upon alleged violations of guidelines promulgated by the American Academy of Pediatric Dentistry. We disagree.

The board is statutorily authorized to oversee the licensure of the dental profession in the state of Ohio, including the imposition of sanctions for behavior that departs from the accepted standards of the profession. As indicated before,

---

12. The hearing examiner refused to admit the affidavit into evidence, but, according to Sohi, the board considered this affidavit in its review of the proceedings as reflected in the board's minutes.

13. *Leon v. Ohio Bd. of Psychology* (1992), 63 Ohio St.3d 683, 687–688, 590 N.E.2d 1223, 1226; *Conrad, supra,* 63 Ohio St.2d at 111, 17 O.O.3d at 67, 407 N.E.2d at 1267.

14. *Pons, supra,* 66 Ohio St.3d 619, 614 N.E.2d 748.

the board can discipline a dentist for providing dental care that departs from the accepted standards of the profession even if no patient is injured. Therefore, the AAPD guidelines are strong evidence and highly probative of the accepted standards of the profession, and of what constitutes a departure from the standards and a potential statutory violation. While the board did not rely solely on the AAPD guidelines in finding Sohi's behavior with regard to patient 1 inconsistent with the acceptable standards of the profession of dentistry, it was certainly not error to consider them. The fourth assignment of error is overruled.

In his final assignment of error, Sohi argues that the trial court should have vacated the board's order because the board had a financial incentive to impose sanctions against him.

Sohi bases his argument on R.C. 119.092, which allows certain prevailing parties in administrative hearings to request attorney fees. Under this statute, had Sohi been a prevailing party after the adjudicatory hearing, he could have filed a motion for the payment of attorney fees related to his defense at the hearing. The statute provides that "the request for the award shall be reviewed by the referee or examiner who conducted the adjudication hearing or, if none, by the agency involved."

Sohi argues that this statute gives the board a financial interest in the outcome of any disciplinary proceeding so that it will always find against the respondent. This argument fails. Where there is an independent hearing examiner, it is the examiner, not the board, who makes any decision about attorney fees, and the decision is not reviewable by the board. R.C. 119.092. Further, a prevailing party does not automatically receive attorney fees. If the board establishes that its position in initiating the matter in controversy was substantially justified, the hearing examiner can decline to award attorney fees to a prevailing party. R.C. 119.092(B)(2)(a).

Accordingly, the board had no financial incentive to impose sanctions. The fifth assignment of error is overruled.

## DISPOSITION OF APPEAL

The allegations raised against Sohi that initiated this investigation are both serious and troubling, and all the more so because children are involved. It is regrettable that no investigator testified at the hearing and that no explanation was provided for the failure to provide all the victims' names prior to the completion of the investigatory process.[15] What we have said in this appeal is

---

15. Compare *Gureasko v. Bethesda Hosp.* (1996), 116 Ohio App.3d 724, 689 N.E.2d 76.

that we agree with the trial court and the board that Sohi's misconduct toward patient 1, standing alone, was sufficient to warrant disciplinary action in this matter, and that Sohi suffered no due process violation in regard to this patient. We also agree that, based solely on the conduct involving patient 1, the other conditions placed on Sohi are appropriate. However, we have also sustained Sohi's due process arguments in part. With respect to the findings of statutory violations, therefore, we affirm the judgment of the trial court in part and reverse it in part. Because we are unable to determine whether the board intended the misconduct towards patient 1, standing alone, to warrant the six-month suspension and related counseling requirements, or whether that punishment was based on Sohi's treatment of unidentified patients as well as patient 1, we remand the cause to the board, via the trial court, for clarification of the sanctions appropriate for the misconduct towards patient 1 only, and for any further proceedings comporting with this opinion.

*Judgment accordingly.*

SUNDERMANN, P.J., and PAINTER, J., concur.