On this appeal of the order of Judge Bridget McCafferty, I concur separately with the majority's resolution of assignments of error three and four, but dissent on assignments two and five, and find assignment of error one moot.
I. Constitutional Arguments in Assignments Three, Four, and Five.
I agree with the majority that, in State v. Steele,[1] we addressed and rejected the issues raised in assignments of error three and four, and can find that case persuasive. The Steele panel found that a defendant's ability to request a determination that he is no longer a sexual predator eliminated any perceived unfairness in holding a sexual predator hearing sometimes years in advance of that person's release from prison, and that the factors of R.C. 2950.09(B)(2) provided sufficient guidance to satisfy the "rational relationship" test of substantive due process. It found that the rational relationship test applied because the defendant had not identified a fundamental right in jeopardy, and then found that the factors were sufficiently related to the goal of public safety so as not to be arbitrary.
Opinions of the Ohio Supreme Court in State v. Cook[2] and State v.Williams[3] reject an assertion that R.C. 2950.09 must be narrowly tailored to protect a convicted offender's fundamental privacy right because the conviction information is already a matter of public record, and one cannot have a privacy right in preventing the dissemination of already public information.[4] The Williams Court also found, for purposes of an equal protection challenge, that R.C. Chapter 2950 does not implicate a fundamental constitutional right.[5] While the guidelines of R.C. 2950.09(B) are subject to criticism because the application of certain factors (e.g., the offender's age) can be viewed as either mitigating or aggravating the likelihood of recidivism regardless of the evidence presented, they are not so arbitrary that they deny due process under the less exacting standard afforded to non-fundamental interests.[6]
I must dissent, however, from the majority's conclusion that we have adequately addressed the procedural due process challenge raised in Hills' fifth assignment of error, and would find that he was not provided adequate notice of the charges against him, nor was he provided any reasonable statement of the evidence upon which those charges were based. For defendants convicted and sentenced prior to January 1, 1997, who are still imprisoned and subject to classification, R.C. 2950.09(C) requires the Ohio Department of Rehabilitation and Correction ("ODRC") to submit a recommendation directly to the sentencing or successor judge, who then determines whether a hearing shall be held based upon that recommendation. If the judge decides to hold a sexual predator hearing, R.C. 2950.09(C)(2)(b) states that he "shall give the offender and the prosecutor who prosecuted the offender for the sexually oriented offense, or that prosecutor's successor in office, notice of the date, time, and place of the hearing." The statute does not require that a defendant be given any information concerning the nature of the charges or the evidence upon which the State intends to rely, despite the fact that such notice is constitutionally necessary even in the most informal proceedings.[7] Notice of the date, time, and place of the hearing is insufficient.
Some judges have suggested that constitutionally effective notice is achieved when the defendant is provided with a copy of the ODRC recommendation along with notice of the date, time, and place of the hearing.[8] This does not address the statute's facial infirmity, because there is no statutory requirement that the defendant be provided with this recommendation or any other information beyond date, time, and place. Nevertheless, I am willing to consider the possibility that judges may impose the procedures necessary for constitutional compliance, and that a facial due process challenge might fail on the theory that the statute need not expressly provide all aspects of due process, and judges can ensure compliance by requiring further protections. Because an analysis of the procedures employed in this case reveals that the judge did not remedy the statute's deficiencies, the statute was unconstitutionally applied, and thus there is no reason to reach the broader issue of its facial validity.
On May 15, 2000, the Cuyahoga County Prosecutor's office, on behalf of the State, filed a motion entitled "State's Request for Pursuit of Sexual Predator Adjudication." The motion stated, in relevant part, as follows:
 Now comes the State of Ohio, * * * having received notice of the recommendation by the Department of Rehabilitation and Corrections that this defendant be adjudicated a Sexual Predator, notifies this Honorable Court that the State has reviewed this case and believes that the available evidence supports such a recommendation. Therefore, the State requests this Court to return the defendant * * * for a hearing pursuant to [R.C.]2950.09(C).
It does not appear that the State served Hills with a copy of this motion.[9] On May 18, 2000, the judge issued an order that stated as follows:
 Defendant is hereby ordered back to this jurisdiction from Belmont Correctional Institution for a sexual predator hearing on June 15, 2000 at 2:00 p.m.
Sheriff to transport.
This journal entry indicates that notice was sent to the sheriff, but does not indicate that notice was sent to Hills. On May 19, 2000, the day after ordering the sheriff to return Hills for a scheduled hearing, the judge journalized an "Order to Forward Inmate File to Prosecutor" which stated, in relevant part, as follows:
 The Warden of the Belmont Correctional Institution is ordered to send an H.B. 180 packet to [the Cuyahoga County Prosecutor's Office] forthwith on this defendant, including, but not limited to the front of his master file, his disciplinary record and institutional summary report, his job and lock assignments, all certificates, his security classification instrument, all presentence and postsentence reports, and all psychological evaluations and reports. * * * If a hearing is scheduled, the State is ordered to provide the defense attorney with a copy of these records.
This journal entry indicates that a copy was sent to Hills, although it references only the possibility of a hearing when, in fact, it had already been scheduled. Despite these oddities, the Cuyahoga County Public Defender's Office apparently received notice of the proceedings,[10] and on May 30, 2000, moved for the appointment of a psychological expert and to dismiss on constitutional grounds, including those stated in this appeal.
Even if one overlooks the technical issues raised by these proceedings and assumes that Hills received notice of the scheduled hearing, requested or acceded to the apparent appointment of the Cuyahoga County Public Defender as his attorney, and was given access to his institutional file, this is still insufficient to comply with procedural due process because he was not given notice of the evidence upon which the State intended to rely.
In State v. Gowdy,[11] the Ohio Supreme Court recognized the importance of procedural protections in sexual predator proceedings, and found it was plain error for a judge to conduct a classification hearing at a defendant's sentencing without first notifying him that such a hearing would take place.[12] The Court found it "imperative that counsel have time to adequately prepare for the hearing" and that "[d]efendants must have notice of the hearing in order to `have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses * * *.'"[13] This opportunity to prepare must include an opportunity to discover the State's evidence, or the right to cross-examine witnesses or to present evidence in defense will be hollow, and the facial grant of notice and an opportunity to be heard will be meaningless.
The scope of process due a defendant involves consideration of three factors: (1) the private interest affected; (2) the risk of erroneous deprivation and the value of additional safeguards; and (3) the governmental interest in the proceeding at issue and the burdens of additional procedures.[14] The protection necessary is intimately related to the importance of the right at issue, not only with respect to the "degree of potential deprivation[,]" but also its length.[15] While the Ohio Supreme Court found that criminal protections were unnecessary in Cook, and that no fundamental rights were at issue in Williams, it nonetheless recognized in Gowdy that the decisions made in sexual predator hearings "will have a profound impact on a defendant's life."[16]
Although the Cook court found that sexual predator proceedings were not part of the criminal trial, it compared them to probation revocation proceedings,[17] which traditionally require more stringent due process notice provisions than those provided here.[18] The importance of sexual predator proceedings is further underscored by the appointment of counsel to indigent defendants at State expense,[19] and the decision in State v. Eppinger,[20] which found that trial judges have discretion and, at times, the duty to appoint an expert at State expense to aid an indigent defendant.[21] The defendant's interest here in fact exceeds that of a probationer, because the sexual offender classification is not a punitive result of the offense, and thus cannot be described as merely a "conditional" interest.[22] Therefore, even if the defendant's constitutional interest in the classification proceeding is not fundamental, it is nonetheless substantial, and requires considerable procedural protection.
Furthermore, the Ohio Supreme Court has admitted that sexual offender classification necessarily entails a high risk of error,[23] and that the consequences of error are, as stated in Gowdy, "profound." Therefore, in addition to the important interest at risk, the second factor cited in Mathews also weighs heavily in favor of increased procedural protections.[24] Although the State undoubtedly has an interest in protecting citizens from sexual recidivists, the thirdMathews factor must also consider the State's interest in avoiding erroneous classifications, both to avoid burdening law enforcement administration,[25] and to ensure respect for the integrity of governmental actions by providing "basic fairness."[26] Without a showing that such procedures would impose a heavy burden on the State, the protection should be afforded.
Once we have recognized the importance of the proceeding and the risk and consequences of error, it is not difficult to recognize the insufficiency of a bare notice that a classification hearing has been scheduled and the defendant will have the opportunity to be present and participate. Furthermore, it is insufficient simply to order that a defendant have the ability to review his institutional file. Proceedings of less import than these routinely call not only for notice of the charges, but for a statement of the evidence upon which the State intends to rely.[27] There should be no undue burden in requiring the State to identify the statutory factors it believes support the proposed classification and the evidence supporting the existence of those factors.
In support of the claim that this court has previously addressed and rejected this assignment of error, the majority cites State v.Copeland[28] and State v. McKinney.[29]
To the extent that these cases, or any cited within them, have addressed and rejected the constitutional challenge here, I submit that they did so without analysis or upon such hollow reasoning that they have no persuasive value.[30] In McKinney, the only case that even attempted to discuss the issue, the court first rejected the claim that a purported sexual predator is entitled to more notice than merely allowing him to review his institutional file, stating that "[t]he opportunity to respond to the government's evidence does not require advance notice of the specific evidence upon which the state intends to rely.[31] The due process challenge, however, was ultimately overruled because he failed to demonstrate prejudice on the basis that he did not show "how the absence of more specific information has prejudiced his ability fairly to defend himself."
The opinions in Goss, Loudermill, Mathews, and Gowdy, among others, completely refute the McKinney court's unsupported statement that "[t]he opportunity to respond to the government's evidence does not require advance notice of the specific evidence upon which the state intends to rely." In a proceeding of this gravity, a defendant is at least entitled to notice of the evidence and witnesses the State intends to present.[32]
Moreover, a defendant in even the most limited constitutionally-protected proceedings generally is entitled to notice of the "charges or other reasons"[33] for the proposed action, a standard that at the very least requires "sufficient notice of the charges against him to allow preparation of a defense * * *."[34] In order to have any substantive meaning, the concepts of notice and an opportunity to be heard must include an opportunity to prepare, and the opportunity to prepare a defense must be focused, at some level, by knowledge of the charges and evidence against which one is defending. A constitutionally sufficient hearing cannot be conducted before the backdrop of a Star Chamber.
The McKinney court found that a defendant's access to the contents of the ODRC recommendation provided adequate notice of the evidence, despite the fact that the statute does not require the contents of that recommendation be provided to a defendant, and does not require the ODRC to submit anything more than a bald recommendation in the first place. As discussed infra, the Ohio Administrative Code contains no provisions governing the ODRC's execution of its duties under R.C. 2950.09. Nevertheless, according to the McKinney court, a defendant who has access to the ODRC's recommendation has adequate notice because he has "as much access to the department's reasoning as the court and the state." The apparent rationale underlying this bizarre position is that a defendant is not entitled to notice of the factual allegations and evidence the prosecutor will present against him because "the judge must determine all the relevant factors."[35] The State, it seems, is to have no clue upon what evidence it will rely until the judge relies on it. Such reasoning would be comical if it were not in practice.
Further, there is no basis upon which to claim that merely giving a defendant the ability to review his institutional file is sufficient to allow preparation of a defense, when he is not informed what parts of that file the State intends to use in proving its case. One cannot simply tell the defendant that the determination will be based upon the factors of R.C. 2950.09(B)(2), which include "all relevant factors, including, but not limited to," those specifically listed, especially when one of the specific factors is "[a]ny additional behavioral characteristics that contribute to the offender's conduct."[36] Knowledge of potentially relevant factors does not substitute for knowledge of the factors the State actually considers relevant, and the evidence it believes supports their existence.
The Ohio Supreme Court has made clear that R.C. 2950.09(B)(2) is not exhaustive, and the State's theory may include other factors.[37]
Without some cognizable theory of both the factual and legal bases supporting the State's case, the purported sexual predator does not have a valid opportunity to defend not only against the record of his sexual offense history, but against any information in his criminal record, his institutional record, as well as unforeseen evidence of his behavioral characteristics gleaned from other sources, and to anticipate the listed and unlisted factors the State will argue are relevant, as well as those the judge might raise sua sponte. Allowing access to files might be sufficient to allow a litigant to prepare a case; it is insufficient to allow preparation of a defense.
As noted, the McKinney decision ultimately found that the defendant had failed to show prejudice flowing from any constitutional violation, and denied his claim on that basis. While I agree that one ordinarily must assess the existence of prejudice in order to sustain a procedural due process challenge,[38] the burden of proving the existence of prejudice is not properly placed on the defendant, and proper analysis reveals that Hills has shown sufficient prejudice here.
Both Crim.R. 52 and Civ.R. 61 allow a judge to "disregard" errors that do not affect substantial rights, but neither rule addresses the standard for assessing prejudice when substantial rights are affected. Judges and commentators, however, have proposed that there are three possible standards for assessing whether error is harmless, all of which place the ultimate burden of persuasion upon the party benefitting from the error:
 (a) that it is more probable than not that the error did not affect the judgment, (b) that it is highly probable that the error did not contribute to the judgment, or (c) that it is almost certain that the error did not taint the judgment.[39]
Moreover, because Hills claims denial of not only substantial, but constitutional, rights to procedural due process, we can affirm the judgment only if, pursuant to Chapman v. California,[40] the error is harmless beyond a reasonable doubt. Chapman clarified that, regardless of the perspective from which the standard was viewed, the beneficiary of the error must demonstrate a lack of prejudice, stating:
 There is little, if any, difference between our statement in Fahy v. Connecticut[41] about "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.[42]
This standard is not confined to procedural rights denied at criminal trials, but is applied in parole and probation revocation proceedings found comparable to sexual offender classifications in Cook, supra, as well as in civil proceedings.[43] Furthermore, the decisions in Cook,Gowdy, and Eppinger establish the gravity of these proceedings, and thus show that constitutional violations cannot be ignored unless the State proves the error harmless beyond a reasonable doubt.
In Gowdy, supra, the Ohio Supreme Court found it plain error to hold a sexual predator hearing without notice to the defendant, and did not require a further showing of prejudice regardless of the fact that the defendant was present and had not shown any marked lack of familiarity with the record or inability to argue the issues.[44] Such an approach recognizes the prejudice inherent in denying a defendant any meaningful opportunity to muster a defense, and that the State must show these procedural deficiencies were harmless.
While I am aware that some cases assert a prejudice requirement as a component of a due process claim, the requirement does not go beyond the prejudice apparent here — that the outcome of the proceeding was disputed, and that the defendant was prevented from preparing a defense. In Watson v. Beckel,[45] the court asserted a "substantial prejudice" requirement, but cited cases in which defendants admitted the charges against them, necessarily rendering the claimed errors harmless under any standard.[46] Neither Watson nor any case it cited undermines the State's duty to prove constitutional error harmless beyond a reasonable doubt, because that standard is met where the defendant admits the violations had no effect on the outcome of the proceedings.
Even if Hills was required to make a record showing prejudice, it would take little to do so here. A defendant who is notified of a sexual predator hearing and is denied a witness list or discovery of the evidence the State intends to use might readily show prejudice to his ability to prepare a defense; in this case, the request and denial of a witness list might have affected Hills' subsequent request for an expert, because he might have foregone the request if he knew the State would present no expert, and thus would have difficulty mustering a prima facie case.[47]
I would sustain the fifth assignment of error.
II. The Judge's Consideration of Evidence Not in the Record.
The majority states three reasons for denying Hills' second assignment of error, stating that the judge "gave no indication that [she] actually relied" on literature that was not in evidence in making her decision, that such reliance was acceptable even if it occurred, and that Hills waived error by failing to object to the judge's reliance on evidence outside the record at the hearing. I disagree with all three contentions, and will address them in reverse order.
I agree that failure to object to the presentation of evidence ordinarily constitutes waiver, but this doctrine generally is applied to rulings on evidence made during the hearing or proceeding itself; in this case the judge referred to evidence outside the record in stating her ruling after the parties had made their presentations. By contrast, inCook, the Ohio Supreme Court found waiver where the lawyer failed to object to the judge's reliance on a presentence investigation report, but noted that the judge and the lawyer engaged in discussion of the contents of the report.[48] The presentence report in Cook was definitely a part of the presentation of evidence; the judge's statements here were a part of her statement of ruling, and objection would have served no purpose. Lawyers will be surprised to learn that they must now interrupt a judge, who is announcing a ruling, to interpose objections, and judges equally dismayed to find they are constantly interrupted by lawyers who must ensure the preservation of error. Hills' objection here is to the judgment itself, not to an evidentiary ruling that occurred during the proceedings.
The majority next claims that the Ohio Supreme Court approved the suasponte consideration of scientific literature on sexual offender recidivism in making sexual predator determinations. While I am in favor of judges educating themselves by reading the scientific literature associated with sexual offenders, violent predation, and recidivism, I cannot agree that a judge who claims to be familiar with that literature is entitled to interject that familiarity into a sexual predator proceeding as fact. Familiarity with the subject should be an aid to assessing and understanding the evidence, especially that provided by experts, analyzing it with respect to the factors of R.C. 2950.09(B)(2), and might also assist the judge in determining the weight that should be given particular factors. Under no circumstances, however, should a judge's knowledge be mistaken for evidence, or used as a substitute for evidence. While I agree with Justice Cook's criticism of the majority opinion on this point in State v. Eppinger,[49] the Eppinger court nonetheless did not approve the sua sponte introduction of scientific literature as evidence to be considered in the absence of expert opinion on the issue.
The last question concerning this assignment is whether the judge actually relied on her personal knowledge of literature not in evidence when making her decision. After summarizing what she believed the literature stated concerning the effect of a general criminal record on a sex offender's likelihood of recidivism, the judge stated, "and I will take that into consideration." This statement cannot be understood as anything but an indication that the judge intended to rely on some uncited literature in making her decision. I agree that there is no indication the judge relied solely on this evidence, but the word "rely" does not require exclusivity. The judge absolutely indicated that she relied on the literature as evidence supporting the sexual predator determination, and I cannot agree that this conduct was appropriate.
Despite the fact that the judge relied on this extraneous "evidence," the circumstances here raise an issue of harmless error. The expert psychiatric report cited Hills' general criminal record as a factor increasing the likelihood of future sexual offenses and cited literature on which he relied, although the report did not include the judge's additional comments as to the literature's content. Despite the judge's comments, however, the expert report does in fact state the basic proposition employed in the judge's ruling — that a general criminal record is a factor increasing the likelihood of future sexual offenses. Because of this, it is tempting to consider the judge's comments harmless. I am unconvinced, however, because the judge's comments indicate a selective use of the evidence contained in the report, which stated two factors increasing the likelihood of future offenses and eight factors decreasing it. The judge apparently discounted the factors decreasing Hills' likelihood of re-offending, and used her knowledge of the literature to heighten the significance of one factor pointing toward re-offense. This selective reading of the literature not only ignored factors pointing away from a sexual predator finding, the judge also found that Hills' familial relationship was an aggravating factor, stating, "I take into consideration we are talking about the offender's niece and that she had a trust in the offender."
This finding conflicts with the psychiatric report, and the uncited literature the judge relied on earlier in her decision — that report, and the literature upon which it relied, in fact indicated that an offender is less likely to re-offend if the object of the initial offense was a family member.[50] I cite this portion of the scientific literature not as evidence, but to point out the necessity of expert opinion and assistance in making sexual predator determinations, and the danger of allowing judges to selectively draw on their own research into the issue without allowing the parties the opportunity to present and view the evidence to be considered and argue its significance. The expert report cited Hills' familial relationship with his nieces as a factordecreasing the likelihood of future offenses, but the judge decided to disregard this mitigating factor and use the same facts to substitute a different, aggravating factor in its place.
While such decision making might be within the judge's discretion after full and open presentation of the evidence and argument from the parties, it is inappropriate for the judge to introduce the evidence and assign weight to it without allowing argument. Such introduction of evidence threatens the fundamental principle of an impartial tribunal; the consideration of evidence without input or argument contradicts the very purpose of the adversarial system. Therefore, I would sustain the second assignment of error and remand this case for further proceedings.
III. Sufficiency of the Evidence, Due Process, and the Eppinger "Model."
Although I would find the first assignment of error moot, I feel it necessary to address the majority's statement that this proceeding approached the "model" suggested in Eppinger,[51] both with respect to the specific procedures employed here and the utility of the "model" itself. With all due respect to our state's highest court, I first dispute the notion that the "model" proceedings outlined in Eppinger can be mere suggestions, rather than necessary components of a constitutionally adequate hearing. Moreover, I disagree with the entire tenor of Eppinger, which suggests something less than an adversarial proceeding at which the State is held to a burden of producing and proving, by clear and convincing evidence, that the defendant is likely to commit further sexual offenses. The idea that "the prosecutor and defense counsel should identify * * * pertinent aspects of the defendant's criminal and social history" suggests something other than an adversarial proceeding in which the State is held to its burden, and "Eppinger's" statement that the judge may appoint an expert "to assist the trial court" apparently approves the appointment, at the defendant's request, of an "independent" expert to be used in aid of the State's case, when the State itself has taken no steps to obtain any expert opinion of its own.[52] The General Assembly could have created an administrative body to make independent, non-adversarial inquiry into the defendant's likelihood of committing future sexual offenses prior to any adversarial hearing, as other states have enacted such a scheme.[53] R.C. 2950.09, however, creates a purely adversarial scheme for making this determination, and judges, prosecutors, and defense lawyers should not be advised otherwise, lest their roles be confused or compromised and the scheme thereby contaminated.
Furthermore, while I have suggested that an accused sexual predator might forego a request for an expert if he becomes aware that the State does not intend to present expert psychiatric testimony, such a decision is by no means easy. Many judges see no reason to require such evidence, and even if the State's case is found insufficient, many appellate judges seem willing, despite the principle of res judicata, to allow the State to continue prosecuting the defendant until it finally obtains a sexual predator determination that can be upheld on appeal.[54] On the other hand, if a defendant seeks and obtains a psychiatric assessment, he risks the substantial likelihood that the judge will ignore those portions of the report that do not support a sexual predator finding and magnify, even to the point of distortion, those that do, regardless of the totality of the report's contents or conclusions, and the report's mere existence can then be used as evidence to sustain the determination against a sufficiency challenge.
While I agree that the classification factors of R.C. 2950.09(B) facially satisfy substantive due process concerns,[55] I cannot agree that those factors can be constitutionally applied without expert guidance. A sexual predator determination without expert assistance, or in complete disregard of an expert's opinion, is an arbitrary application of those factors. Without expert assistance, a judge has no way of knowing how to apply R.C. 2950.09(B), and the list of factors becomes a meaningless rite in a standardless proceeding. The resulting heightened registration and notice requirements for what might be a near-random assortment of sexual offenders is a waste of law enforcement resources, just as the charade of classification is a waste of judicial resources. Less serious offenders might be targeted while the most dangerous predators are ignored, or the database itself might become so diluted that less attention is paid to all offenders.
Because I do not accept Eppinger's model, and because the procedures already outlined in this case violate constitutional guarantees, I cannot agree that this case presents any kind of model to be followed in sexual predator hearings. As already noted, the proceedings were initiated by anex parte motion from the prosecutor asking the judge to schedule a hearing and alleging that the evidence will show that Hills is a sexual predator, despite the fact that R.C. 2950.09 makes no provision for notice to either the prosecutor or the defendant until the judge decides whether to schedule a hearing. The record does not show that Hills was ever clearly notified of the charge or the scheduled hearing, but instead was notified only that his lawyer would have access to his institutional record if a hearing was scheduled — although a hearing already had been scheduled. The State was not required to file any type of notice containing allegations it intended to prove, or outlining at any level the evidence it intended to use in support of those allegations. An expert witness was appointed at Hills' request, but his report was used to provide the evidence necessary to sustain a sexual predator finding, despite the fact that it found Hills' likelihood of recidivism was low.
Although the State is charged with the burden of proof, the proceedings were carried out as though Hills had the duty to disprove the State's case, the theory of which was not disclosed until the hearing and, even then, the State's case was bolstered by the judge's reliance on evidence and argument not in the record. Without notice of the evidence the State would rely on, Hills had no opportunity to prepare a defense. This opportunity is critical, especially given the ambiguity of the factors the judge must consider in making the determination; for example, at the hearing the State argued that the difference between Hills' age in 1987, thirty-five years old, and that of his seven-year-old victim, was an aggravating factor that increased the likelihood of future offenses. Had the defense been aware of this theory prior to the hearing, it likely would have been able to prepare a persuasive argument (which was not presented at the hearing) that Hills' current age (49) is the relevant consideration, and is now a factor decreasing the likelihood of future offenses.[56]
No lawyer, doctor, or barber would fail to object if notified that a hearing had been scheduled to revoke his professional license and that, while one or two incidents might have triggered the proceeding, he would have to defend himself against not only an undisclosed prosecution, but against any evidence the decision maker was able to review and find relevant, regardless of whether it had been presented by a prosecutor at the hearing or simply offered as a matter of voluminous "public record." A lawyer would not be expected to defend his every action without specification, nor a barber every haircut, nor a doctor every patient treatment plan.[57] In fact, proceedings affecting professional licenses are accorded specific rights of notice and opportunity to prepare a defense that exceed those currently available to accused sexual predators.[58]
Sexual offender classifications should be closely scrutinized for due process compliance precisely because they involve distasteful defendants, not in spite of that fact. I respectfully submit that overzealous attempts to construe the unfortunate provisions of R.C. 2950.09(C) as constitutional lead to equally unfortunate results, and that honest assessment will not unleash waves of sexual predators upon unsuspecting citizens, but will instead help strengthen the law and provide increased protection. In that spirit, I feel it necessary to generally address the provisions of R.C. 2950.09(C).
Sexual predator statutes have been enacted in all fifty states, the District of Columbia, and United States territories, spurred by the publicity of New Jersey's "Megan's Law" and the federal enactment of the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program.[59] The federal act denies certain federal funding to states that fail to enact registration statutes, requires particular provisions, and generally mandates that states pass laws to identify and register sex offenders and "sexually violent predators," and that those placed in the latter category be subject to heightened registration requirements, including quarterly verification of residence information. The federal law defines "sexually violent predator" as "a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses."[60]
Although the federal act does not require slavish adherence to its terms, states that have adopted a scheme for "sexually violent predator" adjudication[61] generally define the term to include and require a finding of some type of "mental abnormality or personality disorder" before the defendant is classified as a sexual predator.[62] Moreover, these states also require professional psychiatric examinations prior to classification as a sexual predator.[63] The Ohio statute omits the psychiatric component of the definition,[64] and does not require a psychiatric examination before an individual can be adjudicated a sexual predator, even though such an exam is now a discretionary part of the suggested model for such proceedings.[65]
The Ohio scheme does not create a new administrative body, although it does give the ODRC the additional administrative duty to identify incarcerated sexual offenders who were sentenced prior to January 1, 1997, and to determine whether each should be recommended for sexual predator proceedings. However, while the ODRC is required to make a "determination" before submitting its recommendation, the substance of the determination is rather nebulous, as is the identification of the "department" as the body responsible for making the determination — most states that create administrative classification boards specify the qualifications of those who will sit on the board, but the Ohio statute practically allows the ODRC to assign determination and recommendation duties to anyone it employs, regardless of qualifications. The Ohio Administrative Code contains no regulations concerning the ODRC's policies for carrying out its duties under R.C.2950.09(C)(1) and, even if it did, the ODRC is not required to submit details of its determination to the sentencing judge. Not only is the ODRC recommendation not required to have any meaningful content submitted by any qualified person, the judge is not statutorily required to show it to the defendant even if it did.
States that do not create a qualified administrative body to make classification determinations or recommendations (and even some that do) typically require local prosecutors to file petitions requesting judicial determination.[66] R.C. 2950.09(C), however, not only fails to require qualified personnel to make a useful recommendation, it omits the necessity of any pleading, petition, or complaint from a prosecuting attorney, instead creating a scheme in which the ODRC submits its recommendation not to the local prosecutor, but to the sentencing or successor judge. Whatever the General Assembly's purpose in omitting the local prosecutor from this process and, instead, requiring a direct submission to a judge, the results have been chaotic. As already discussed, the scheme denies defendants notice of the allegations and evidence the State expects to use in the event a hearing is scheduled. In addition, the judge's initial duty to determine whether a hearing is warranted confuses the roles of the prosecutor and the judge; regardless of whether this confusion can be harmonized with constitutional separation of powers doctrines, and I believe it cannot, the omission of the prosecutor leads to awkward results.
In Hills' case, the Cuyahoga County Prosecutor filed a motion requesting the judge to schedule a sexual predator hearing, citing the ODRC recommendation. Such motions have become routine in the Cuyahoga County Common Pleas Court.[67] The difficulty with this practice, however, is that R.C. 2950.09(C) makes no provision allowing either party to file motions attempting to influence the judge's decision whether to schedule a hearing, and in fact makes no provision allowing notice of the ODRC recommendation to either party until the judge decides whether to schedule the hearing. The record here not only shows that the prosecutor somehow received notice of the ODRC recommendation, it indicates at the same time that Hills had no notice of the recommendation, and that the prosecutor petitioned the judge to schedule a hearing without service or notice to Hills. These questionable practices can be traced to the General Assembly's unfathomable decision to have the ODRC send its standardless recommendation to the judge instead of the prosecutor, and the Ohio judiciary's equally unfathomable efforts to ignore the constitutional blunders of that scheme.
I would reverse the judgment and remand for further proceedings.
[1] (Sept. 7, 2000), Cuyahoga App. No. 76205, unreported.
[2] (1998), 83 Ohio St.3d 404, 700 N.E.2d 570.
[3] (2000), 88 Ohio St.3d 513, 728 N.E.2d 342.
[4] Cook, 83 Ohio St.3d at 413-414, 419, 700 N.E.2d at 579, 583;Williams, 88 Ohio St.3d at 525-526, 728 N.E.2d at 355-356.
[5] Id. at 531, 728 N.E.2d at 359.
[6] Fabrey v. McDonald Village Police Dept. (1994), 70 Ohio St.3d 351,353-354, 639 N.E.2d 31, 33-34.
[7] See, e.g., Goss v. Lopez (1975), 419 U.S. 565, 581, 95 S.Ct. 729,740, 42 L.Ed.2d 725, 739 (temporary school suspension requires notice of the charges * * * and * * * an explanation of the evidence the authorities have * * *.); Cleveland Bd. of Edn. v. Loudermill (1985),470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494, 506 (Goss notice required before public employee's pretermination hearing, even though employee is entitled to a full post-deprivation hearing).
[8] See State v. McKinney (Jan. 25, 2001), Cuyahoga App. No. 77659, unreported ("Appellant obviously had a copy of the corrections department's recommendation * * *.").
[9] The propriety of such a motion under R.C. 2950.09(C) has not been challenged, although two questions immediately arise from its filing; (1) how did the prosecutor receive notice of the ODRC recommendation, and (2) what evidence did the prosecutor have access to at that time to support an allegation that Hills satisfied the definition of a sexual predator? Subsequent questions would involve the propriety of the prosecutor's exparte attempt to influence the judge's determination whether to schedule a hearing — not only whether the motion is statutorily allowed, but whether the prosecutor is allowed to present it to the judge without notice to the defendant.
[10] It is unclear how the Public Defender's office received notice of the proceedings, or how it was appointed to represent Hills. The Public Defender did not represent Hills in the underlying criminal case.
[11] (2000), 88 Ohio St.3d 387, 727 N.E.2d 579.
[12] Id. at 398, 727 N.E.2d at 589.
[13] Id., quoting R.C. 2950.09(B)(1).
[14] Mathews v. Eldridge (1976), 424 U.S. 319, 335, 96 S.Ct. 893,903, 47 L.Ed.2d 18, 33.
[15] Id. at 341, 96 S.Ct. at 906, 47 L.Ed.2d at 37.
[16] Gowdy, supra.
[17] Cook, 83 Ohio St.3d at 425, 700 N.E.2d at 587.
[18] Morrissey v. Brewer (1972), 408 U.S. 471, 489, 92 S.Ct. 2593,2604, 33 L.Ed.2d 484, 499; Gagnon v. Scarpelli (1973), 411 U.S. 778,782, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656, 662.
[19] R.C. 2950.09(B)(1).
[20] (2001), 91 Ohio St.3d 158, 743 N.E.2d 881.
[21] Id. at syllabus.
[22] Morrissey, 408 U.S. at 480, 92 S.Ct. at 2600,33 L.Ed.2d at 494.
[23] Eppinger, 91 Ohio St.3d at 163, 743 N.E.2d at 886.
[24] Mathews, 424 U.S. at 335, 343-346, 96 S.Ct. at 903, 907-908,47 L.Ed.2d at 33, 38-40.
[25] Eppinger, 91 Ohio St.3d at 165, 743 N.E.2d at 888.
[26] Morrissey, 408 U.S. at 484, 92 S.Ct. at 2601-2602,33 L.Ed.2d at 496.
[27] Goss, 419 U.S. at 581, 95 S.Ct. at 740, 42 L.Ed.2d at 739;Loudermill, 470 U.S. at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506.
[28] (Dec. 18, 2000), Cuyahoga App. Nos. 77333, 77500, 77501, 77502, 77517, unreported.
[29] (Jan. 25, 2001), Cuyahoga App. No. 77659, unreported.
[30] This criticism applies with equal force to State v. Green (Apr. 26, 2001), Cuyahoga App. No. 77771, unreported, in which I concurred. I regret that judges of this district, including me, have tended to reject constitutional challenges to R.C. 2950.09 without adequate consideration. See Copeland, supra (separate opinion of Karpinski, J.).
[31] McKinney, supra.
[32] See, e.g., Morrissey, 408 U.S. at 487-489, 92 S.Ct. at 2603-2604,33 L.Ed.2d at 497-499 (evidence, witness identity, confrontation and cross-examination must be provided at preliminary hearing, which is followed by a final revocation hearing); see, also, Sohi v. Ohio StateDental Bd. (1998), 130 Ohio App.3d 414, 422-423, 720 N.E.2d 187, 192-193
(failure to identify allegedly mistreated patients was denial of adequate notice).
[33] R.C. 119.07. Although this is a statutory standard, there should be no dispute that it is constitutionally derived.
[34] Sohi, 130 Ohio App.3d at 422, 720 N.E.2d at 192.
[35] McKinney at pg. 9.
[36] R.C. 2950.09(B)(2)(j).
[37] State v. Thompson (2001), 92 Ohio St.3d 584, 588, 752 N.E.2d 276,280.
[38] Estes v. Texas (1965), 381 U.S. 532, 542-543, 85 S.Ct. 1628,1632-1633, 14 L.Ed.2d 543, 550.
[39] McQueeney v. Wilmington Trust Co. (C.A.3, 1985), 779 F.2d 916,924.
[40] (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705,710-711.
[41] (1963), 375 U.S. 85, 86-87, 84 S.Ct. 229, 230,11 L.Ed.2d 171, 173.
[42] Id.
[43] United States v. Johns (C.A.5, 1980), 625 F.2d 1175, 1176;Burnette v. School Bd. of Virginia Beach (C.A.4, 1976), 530 F.2d 124,125.
[44] Gowdy, 88 Ohio St.3d at 398, 727 N.E.2d at 589.
[45] (C.A.10, 2001), 242 F.3d 1237.
[46] Id. at 1242.
[47] State v. Krueger (Dec. 19, 2000), Cuyahoga App. No. 76624, unreported.
[48] Cook, 83 Ohio St.3d at 424-426, 700 N.E.2d at 586-587.
[49] 91 Ohio St.3d at 167-169, 743 N.E.2d at 889-890.
[50] Hanson and Bussiere, Predicting Relapse: A Meta-Analysis of Recidivism Studies (1998), Vol. 66, No. 2, Journal of Consulting and Clinical Psychology, 348-362.
[51] 91 Ohio St.3d at 166, 743 N.E.2d at 888-889.
[52] Hills' motion in this case actually requested appointment of an unnamed, "independent" expert rather than naming a defense expert whom he wished to employ, and the judge appointed an expert from the court psychiatric clinic.
[53] See, e.g., Mass. Laws 6-178K; N.Y.Correction Law 168-l, 168-n.
[54] See, e.g., State v. Wilson (Oct. 26, 2000), Cuyahoga App. No. 77530, unreported.
[55] Steele, supra.
[56] One of the difficulties with R.C. 2950.09(B) is that the factors are stated in anticipation of proceedings involving current offenders; they must be reconsidered and adjusted when applied retroactively.
[57] Sohi v. Ohio State Dental Bd. (1998), 130 Ohio App.3d 414,422-423, 720 N.E.2d 187, 192-193.
[58] R.C. 119.07; Sohi, supra.
[59] Section 14071, Title 42, U.S.Code.
[60] Section 14071(a)(3)(C), Title 42, U.S.Code.
[61] At the time of this writing not all states have done so. Amendments to the federal act have required states to amend their own statutes to comply with new requirements, but the final deadline for such compliance has not passed.
[62] See, e.g., R.R.S.Neb. 29-4005(2)(d); Nev.Rev.Stat. 179D.430; N.C.Gen.Stat. 14-208.6(6); Pa.C.S. 42-9792; Vt.Stats. 13-5401(12).
[63] R.R.S.Neb. 29-4005(2)(a); Nev.Rev.Stat. 179D.510(2); N.C.Gen.Stat. 14-208.20(b); Pa.C.S. 42-9795.4; Vt.Stats. 13-5405(b).
[64] R.C. 2950.01(E).
[65] Eppinger, 91 Ohio St.3d at 166, 743 N.E.2d at 888-889.
[66] Nev.Rev.Stat. 179D.510(1); R.I.Gen. Laws 11-37.1-6(b); W. Va. Code15-12-2a(c).
[67] See, e.g., State v. Arthur (Aug. 16, 2001), Cuyahoga App. No. 77770, unreported; State v. Reese (June 28, 2001), Cuyahoga App. No. 77953, unreported; State v. Green (Apr. 26, 2001), Cuyahoga App. No. 77771, unreported; State v. Perry (Nov. 16, 2000), Cuyahoga App. No. 77724, unreported.