[Cite as *Bennett v. Ohio Dept. of Edn.*, 2022-Ohio-1747.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

DONALD E. BENNETT, JR.,                :

    Plaintiff-Appellant,          : CASE NO. 21CA3948

                                  :

v.                                     :

OHIO DEPARTMENT OF EDUCATION,           DECISION AND JUDGMENT ENTRY

                                  :

    Defendant-Appellee.

_____

APPEARANCES:

Stanley C. Bender, Portsmouth, Ohio, for appellant.

Zoe A. Saadey Lamberson, Assistant Attorney General, Columbus, Ohio, for appellee.

_____

CIVIL CASE FROM COMMON PLEAS COURT, GENERAL DIVISION
DATE JOURNALIZED:5-18-22
ABELE, J.

{¶1} This is an appeal from a Scioto County Common Pleas Court judgment that affirmed the order of the Ohio Department of Education, defendant below and appellee herein, to revoke the substitute teaching license of Donald E. Bennett, Jr., plaintiff below and appellant herein.

{¶2} Appellant assigns two errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ONLY FAILING TO CONSIDER ALL OF THE EVIDENCE

> BUT, MORE IMPORTANTLY, BY FAILING TO REQUIRE
> THE ADMINISTRATIVE AGENCY TO PRODUCE ALL OF THE
> EVIDENCE, I.E., TO HAVE THE ENTIRE RECORD TO
> REVIEW."
>
> SECOND ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT'S DETERMINATION THAT ODE'S
> DECISION DID NOT VIOLATE APPELLANT'S
> SUBSTANTIVE DUE PROCESS RIGHTS IS BOTH WRONG
> AND A QUESTION OF LAW AND THIS COURT'S REVIEW
> IS PLENARY."

{¶3} On November 7, 2017, appellant served as a substitute teacher at Valley Local Middle School and was present with Students 1, 2, 3, 4, and 5, among others, for a study skills class. Students 1-5 accused appellant of (1) threatening to stab Student 1 with a pen, and (2) placing his hands on Student 1's neck/shoulders/shirt.

{¶4} On June 18, 2019, appellee (ODE) sent a Notice of Opportunity for Hearing to appellant to notify him that the State Board of Education intended to determine whether to limit, suspend, revoke, or permanently revoke his substitute license. The notice included allegations of misconduct[1] and informed appellant that (1)

---

[1]
COUNT 1
On or about November 7, 2017, you engaged in conduct unbecoming to the teaching profession when you had an inappropriate verbal and physical interaction with Student 1, which included you putting your hands on Student 1 and/or Student 1's shirt collar and threatening to stab Student 1.
COUNT 2

his actions violated R.C. 3319.31(B)(1)[engaging in an immoral act, incompetence, negligence, or conduct unbecoming to the position], and (2) he was entitled to a hearing. On October 11, 2019, ODE sent an amended Notice of Opportunity for Hearing that omitted Count 5, but otherwise the same. ODE also requested subpoenas for Principal Aaron Franke, Student 1, Mother of Student 1, Student 2 and Student 3. Appellant requested subpoenas for Franke, Superintendent of the South Central Ohio Educational Service Center Sandy Mers, ODE Staff Attorney Samuel Dunsky and ODE Superintendent of Public Instruction Paolo DeMaria. Subsequently, the hearing officer, pursuant to the Ohio Adm.Code 3301-73-13(D) confidential investigation provision, granted ODE's motion to quash the

---

On or about December 4, 2008, in the Plymouth Municipal Court, your case was dismissed after you successfully completed a first offenders program relating to the charge of one misdemeanor count of sale of alcohol to underage persons.

COUNT 3

On or about January 2, 1997, in the Portsmouth Municipal Court, you were convicted of one minor misdemeanor count of disorderly conduct.

COUNT 4

On or about December 2, 1992, in the Circuit Court of the Second Judicial Circuit of Gadsden County, Florida, you pled no contest to one misdemeanor count of cultivation of cannabis, for which adjudication was withheld.

COUNT 5

On or about March 1, 2005, June 9, 2005, July 10, 2006, June 5, 2007, July 31, 2007, and February 8, 2017, you engaged in conduct unbecoming to the teaching profession when you failed to fully disclose your criminal history on your applications for licensure to the Ohio Department of Education.

subpoenas for Dunsky and DeMaria.

{¶5}  At the hearing, appellee called several witnesses including appellant, Students 1, 2, 3, and Principal Franke. Student 1 testified that, during his study skills class, he talked with Student 3 and played with his Harry Potter wand pen: "I was seeing how it opened, and I was twisting it in and out, and it just kept clicking.  And I was watching it and how the ball back of it blew up."  Student 1 said that at that point, appellant "walked up to me and told me to give me the pen.  And I told him no, because it wasn't mine.  And I handed it back to [Student 3}," then "he [appellant] took the pen from [Student 3] and grabbed the collar of my shirt and said he was going to stab me with it."  Student 1 indicated that appellant did not smile or laugh, and then "grabbed the collar of my shirt, and, like, he was pulling like this, so I proceeded to stand up and turn around so he couldn't stab me in my back with the pen."  After appellant let go of Student 1, he sat down.  Student 1 did acknowledge the disruptive nature of his pen clicking and that he did not tell his mother about the incident.

{¶6}  After Principal Franke called Student 1's mother, they all discussed the incident the following day.  Also, students 2, 3, 4, and 5 spoke with Franke and gave him written statements. Student 1 read his statement during the hearing:

> I was messing with a pen of Student 3 - - 3's, and he walked up to me and said give me the pen. I gave him the pen and said it wasn't mine, Student - - it was Student 3's. He grabbed me by the shirt  - - yeah - - by my shirt, then he threatened me and said he was going to stab me with it, and I stood up so he could not - - so he would not be able to stab me in the back, and then he walked away, and I did not speak to him again that day.

Student 1 additionally testified that, at Franke's request and in Franke's presence, he and other students typed their statements while in the computer lab. Student 1 did acknowledge that he talked with the other students prior to them making statements, but denied they discussed the matter with the goal of getting their "stories straight." Student 1 further acknowledged that Student 2's statement that "the only thing I heard from Mr. Bennett out of that sentence was, 'kill'" and that appellant "put his hands around the reporting student's neck and choked him" differed from his account.

{¶7} Student 3 testified that approximately seven students occupied the classroom when Student 1 asked to borrow his pen. Appellant then approached and asked, "Whose pen is that?" When Student 1 said Student 3, appellant said, "Give it to me." When Student 1 responded, "Why?," appellant grabbed Student 1 by the shirt collar and said, "Give it to me, or I'll stab you with it." Student 3 said he did not believe appellant joked because of his serious and angry tone. Student 1 then gave the pen to appellant,

who handed it to Student 3 and walked away.

{¶8} A couple of days after the incident, Principal Franke asked Student 3 to provide a written statement that he also read at the hearing:

> First Student 1 was looking at my pen and standing up. Then Mr. Bennett walked over and said what do you have. Then Student 1 said Student 3's pen and Mr. Bennett said let me see it. Then Mr. Bennett said give it to me now or I will stab you with it. As he said that he was grabbing Student 1's shirt collar. And then Student 1 gave him the pen. Then Mr. Bennett looked at it and gave it back to me.

{¶9} Student 2 testified that, on the day of the incident, she sat about five feet away from Student 1, while approximately 20 people occupied the classroom. Student 1 had a wand from the book fair and everyone was "doing their homework and stuff, so he was playing with the wand, not really doing what he was supposed to." When appellant approached Student 1 to ask for the wand, Student 1 refused to give it to appellant. When appellant again asked for the wand and Student 1 did not comply, appellant approached Student 1 and "it kept on going like that." Student 1 "sort of got irritated, stood up, and Mr. Bennett said that he would stab him if he didn't give it to him." Appellant then "grabbed Student 1 somewhere around the neck, shoulder, somewhere like that, and took [the wand] from Student 1. And then Mr. Bennett went back to the

teacher's desk." Student 2 also did not believe appellant joked.

Later that day, Student 2 told her parents about the incident and a

day or two after spoke with Principal Franke. Student 2 also said

that Students 2, 3, 4 and 5 discussed the incident. Student 2 also

read her written statement:

> So, we were in study skills in Ms. Canter's class at the
> end of the day. We had a substitute and his name was Mr.
> Bennett. We were in class doing work and Student 1 was
> being a little disruptive throughout the class. He was
> out of his seat and talking out loud while so people were
> trying to do their homework. It was the second day of the
> book fair, and you're able to buy books, posters and
> toys/gadgets. Well, Student 1 had like this Harry Potter
> wand and he was playing with it instead of doing his work.
> Mr. Bennett came over and said, 'Student 1, give me that.'
> But Student 1 did not do so. Mr. Bennett said again,
> 'Student 1, give me that now,' but once again, Student 1
> did not give the object to him. Now at this point Student
> 1 stood up out of his chair, put the object behind his
> back, and looked in Mr. Bennett's eyes. Mr. Bennett said,
> 'Give me that right now or I'll stab you.' Student 1 said
> something but I could not hear what he had said, and Mr.
> Bennett said something back, but I also could not tell what
> he said except for the only thing I heard from Mr. Bennett
> out of the sentence was 'kill.' After Mr. Bennett said
> that, he grab Student 1's neck, held on for a couple of
> seconds and pushed Student 1 back. At this point, Mr.
> Bennett had the wand and went back to Mrs. Canter's bigger
> desk.

{¶10} Valley Middle School Principal Aaron Franke testified

that appellant had served as a substitute teacher for a year or two

before the incident. Franke acknowledged that he spoke with

Students 1, 2, 3, 4, and 5 and he referred to them as classmates,

not necessarily friends. Based on what he had learned, Franke

believed that appellant had behaved inappropriately and unprofessionally in the classroom. A day or two later, Franke called appellant and took notes from the conversation and, according to Franke, appellant "seemed confused by the questions, and he was also very nonspecific with his answers. He didn't admit to doing it, but then he also didn't say that he didn't do it." When asked if he put his hands on Student 1, appellant said, "No, not that I recall. Possibly only to sit him down, like I maybe put my hand on his shoulder to sit him down." When asked if he threatened to stab Student 1, appellant said, "I don't recall saying that, Aaron, but if I did, it was just a joke, but I don't joke like that."

{¶11} Based on Principal Franke's conversation with appellant, Franke believed appellant (1) did say "I'm going to stab you" to Student 1, and (2) put his hands on Student 1. Because of this incident, Franke removed appellant from the substitute list.

{¶12} On cross-examination, Principal Franke acknowledged that Student 1 has a temper and staff members have had difficulty with him. Franke further stated that "[t]here had been discipline incidents with [Student 1]," but he is "not a severe discipline problem, but he could and can be argumentative." Franke further stated that, although he believed appellant threatened Student 1

and acted inappropriately and unprofessionally, he did not report the conduct to law enforcement because he did not believe that appellant would harm students.

**{¶13}** ODE Staff Attorney Kyle Downie testified that Attorney Samuel Dunsky conducted an investigation, but had since changed roles with ODE. Downie explained that ODE does not call the investigator to testify at hearings "because they're not going to be testifying about what they spoke about, because the investigations we do are confidential." Appellant's counsel also referenced a statement appellant gave at his ODE interview, but ODE counsel asserted that statement is a R.C. 3319.311(A)(1) and Ohio Adm.Code 3301-73-04 confidential investigative record. The hearing officer thus did not permit any reference to the statement.

**{¶14}** Appellant's counsel also questioned Staff Attorney Downie regarding appellant's 2008 misdemeanor charge for the sale of alcohol to a minor, and Downie explained that Licensure Code of Professional Conduct for Educators Principle 1(b) provides that, regardless of conviction, a violation of a federal, state or local statute or rule is "still conduct unbecoming" pursuant to R.C. 3319.31(B)(1). When asked why ODE continued to issue substitute licenses after two prior offenses, Downie stated, "[i]f you go back to 2008, we knew about it. We issued him a warning letter around

June, July, 2008, that was sent to the address that is right there on the Notice – Amended Notice of Opportunity for Hearing." Also, South Central Ohio Educational Service Center Superintendent Sandra Mers testified that she is the custodian of personnel records for Scioto County substitute teachers and she brought appellant's records to the hearing.

{¶15} Appellee called appellant, as if on cross-examination, and he testified that, on November 7, 2017, he served as a substitute teacher at Valley Middle School. During the last period study skills class, Student 1 sat at a table approximately 15 feet from appellant and played with a wand pen. Initially, appellant did not recall approaching Student 1's table and telling him to give him the pen, or taking the pen. Appellant also denied that he stated, "Give me the pen, or I'll stab you with it," that he grabbed Student 1 by the shoulder or shirt collar, and that he took the pen from Student 1.

{¶16} Appellant explained that when he spoke with Principal Franke (1) appellant did not recall telling Student 1 he would stab him, and (2) he disputed that he told Franke that, if he did make a comment about stabbing, it was a joke. Appellant acknowledged that he told Franke he did not put his hands on Student 1, and also disputed that he told Franke that, if he had put his hands on

Student 1, it would have been on his shoulder to "set him down." Appellant also acknowledged his 1992 Florida misdemeanor cannabis charge, his 1997 disorderly conduct conviction, and his 2008 misdemeanor sale of alcohol to a minor charge.

{¶17} On direct examination, appellant testified he is 69 years old, has been a substitute teacher for approximately nine years in various school districts, and has substituted over 500 times from fourth through twelfth grades. When asked if he told Student 1 he would stab him, appellant denied doing so and stated, "I said I would grab his leg. I did not say I would stab him."

{¶18} Appellant further testified that after Student 1 "got up, went over to the next group of desks, jerked the girl's paper out of her hand, and started writing her answers on his," he told Student 1, "you need to sit back down, son," but Student 1 "just ignored me, and walked around the room, took a couple more kids' papers, wrote their answers down." Appellant said, "'Student 1, you need to have a seat' and I got up and walked around * * * the block of tables." When appellant came within 8-9 feet from Student 1, "[Student 1] took off. He went flying over there and round the other group of desks and started pulling other kids' papers and writing their answers down. He was copying." Appellant stated that, after he talked to a couple of other students, he turned

around and Student 1 "had his back to me right in front of me,"
about "3 feet maybe" away. Appellant "crossed [his] arms and went
boom, boom, boom" on Student 1's shoulder while Student 1's back
was to him. Student 1 ignored him, so appellant:

> [d]id it a second time. After I did it the
> second time, he [Student 1] turned around, looked
> at me and went, 'Ahhhhh' and just fell on the
> floor. I went, 'What is going on?' And he put
> his feet up in the air to kick me, laying [sic.]
> flat on his back, had his feet up, and I had - -
> like I said, I had injuries from construction.
> My knee was wrapped in an Ace bandage, so it was
> bothering me all day. I thought he was going to
> kick me in the knee. And I looked down at him
> and said, '[Student 1], don't make me grab you
> in the leg.' And he put his feet down. Then I
> said, 'Get back in your seat,' * * * I reached
> my hand down. He grabbed it and pulled himself
> up, walked over and sit [sic.] down at his desk.
> Two minutes later, the bell went off.

{¶19} Appellant left a note for the regular teacher (Ms.
Canter) about the day and informed her that Student 1 had been
"totally out of control." Appellant also said he wanted to ask
Principal Franke whether Student 1 was "on Ritalin or something,"
but Franke was not in his office. A couple of days later, Franke
called appellant to explain the incident, but appellant said "I
just couldn't recall what was going on." Appellant also received a
call from ODE about the incident, but he was not permitted to
testify about the contents of the call.

{¶20} Appellant stated that, prior to his first substitute license in 2004, ODE inquired about his 1992 Florida charge. Apparently, ODE found his explanation sufficient and issued his first license. ODE also called appellant in 2017 when he applied for the five-year license. After appellant explained the Florida charge, the ODE representative said, "That's exactly what you said before," and reissued his license.

{¶21} After hearing the evidence, the hearing officer filed her report and recommendation and noted that the standard of proof in administrative cases is a preponderance of the evidence. Concerning Counts 2-4, the officer found that, although ODE proved the existence of a couple misdemeanor violations, if ODE "determined in 2008 that appellant's past court involvement was not of sufficient import to preclude the issuance of a license, the convictions cannot now be the basis for action against his license retrospectively."

{¶22} Regarding Count 1, the hearing officer observed that, although the students did not give precisely the same details, "their accounts are substantially the same regarding the physical contact with Student 1's neck and the word "stab." She further noted that appellant "has given varied accounts of what took place. For example, "[w]hen interviewed by Mr. Franke, Mr. Bennett could

not remember much about the incident, other than he might have placed his hand on Student 1 to guide him; if he said, 'stab,' he was only joking." Further, early in the hearing appellant testified he did not remember the toy pen, but later stated that Student 1 walked around the classroom, clicked the toy pen and acted in a disruptive manner. Thus, the hearing officer "did not find Mr. Bennett's testimony regarding the incident to be credible," and determined that ODE had proven, by a preponderance of the evidence, that appellant's conduct constitutes "conduct unbecoming a teacher, as set forth in Count 1 of ODE's Notice, in violation of R.C. 3319.31(B)(1)." The hearing officer further concluded that appellant's misconduct merited the revocation of his teaching credential and, pursuant to Ohio Admin.Code 3301-73-22(A)(2)(a), a prohibition from reapplication for his credentials for a period of time. However, because almost three years had passed since the 2017 incident, the officer limited that period to one year with reapplication contingent on the completion of classroom management training and anger management training.

{¶23} After review, the State Board of Education accepted the hearing officer's report and recommendation to revoke appellant's substitute career technical teaching license. Appellant appealed

the resolution to the Scioto County Common Pleas Court and the court affirmed the Board's actions. This appeal followed.

Standard of Review

{¶24} In general, in an R.C. 119.12 an administrative appeal a trial court reviews an administrative agency's order to determine whether the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, the court may reverse, vacate, or modify the order, or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 119.12. Thus, a reviewing trial court is obligated to uphold an order if supported by reliable, probative, and substantial evidence and is in accordance with law. *Id.*; *In re Williams*, 60 Ohio St.3d 85, 86, 573 N.E.2d 638 (1991); *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). "'Reliable' evidence is dependable or trustworthy; 'probative' evidence tends to prove the issue in question and is relevant to the issue presented; and 'substantial' evidence carries some weight or value." *Ohio Civ. Rights Comm. v. Case W. Res. Univ.,* 76 Ohio St.3d 168, 178, 666 N.E.2d 1376 (1996), citing *Our Place, Inc. v. Ohio Liquor Control Comm.,* 63 Ohio St.3d 570, 571, 589 N.E.2d 1303

(1992); *Washington Cty. Home v. Ohio Dept. of Health*, 179 Ohio App.3d 78, 2008-Ohio-4342, 896 N.E.2d 1011, ¶ 20-23 (4th Dist.).

**{¶25}** When undertaking a review of an administrative agency's order of adjudication, a court of common pleas acts in a limited appellate capacity. *See Univ. Hosp. of Cincinnati College of Medicine v. State Emp. Relations Bd.,* 63 Ohio St.3d 339, 343, 587 N.E.2d 835 (1992), citing *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 279-280, 131 N.E.2d 390. In undertaking this review, a trial court "must give due deference to the administrative resolution of evidentiary conflicts." *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111, 407 N.E.2d 1265 (1980). However, "the findings of the agency are by no means conclusive." *Id.*

> Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order. Thus, where a witness' testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may properly decide that such evidence should be given no weight. Likewise, where it appears that the administrative determination rests upon inferences improperly drawn from the evidence adduced, the court may reverse the administrative order.

*Id.* at 111-112.

**{¶26}** With respect to the role of appellate courts undertaking a review of a trial court's review of an administrative agency's order, the appellate court's review is even more limited. While a

trial court must examine the evidence, this is not the appellate court's function. Instead, an appellate court determines whether a trial court abused its discretion. Absent an abuse of discretion, a court of appeals may not substitute its judgment for the administrative agency or a trial court. Instead, an appellate court must affirm the trial court's judgment. *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257,260-261, 533 N.E.2d 264 (1988); *see also Henry's Café, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233, 163 N.E.2d 678 (1959).

**{¶27}** Consequently, an appellate court's standard of review is limited to a determination of whether a trial court abused its discretion. *Mathews v. Ohio State Liquor Control Comm.*, 10th Dist. Franklin No. 04AP-46, 2004-Ohio-3726, ¶ 11. An abuse of discretion implies that a trial court's attitude was unreasonable, arbitrary, or unconscionable. *Landis v. Grange Mut. Ins. Co.,* 82 Ohio St.3d 339, 342, 695 N.E.2d 1140 (1998); *Malone v. Courtyard by Marriott L.P.,* 74 Ohio St.3d 440, 448, 659 N.E.2d 1242 (1996). However, appellate courts will exercise independent judgment concerning purely legal issues. *VFW Post 8586 v. Ohio Liquor Control Comm.*, 83 Ohio St.3d 79, 81-82, 697 N.E.2d 655 (1998).

I.

**{¶28}** In his first assignment of error, appellant asserts that the trial court's failure to consider all of the evidence and, in particular, the failure to require the administrative agency to produce all of the evidence, constitutes abuse of discretion. Specifically, appellant contends that his defense had been improperly limited in light of the failure to: (1) order interviews of all potential witnesses, (2) order potential witnesses be available to interview, (3) order appellee to produce appellant's previously recorded statement[2] as an exhibit, (4) permit appellant to subpoena Attorney Samuel Dunsky (whom appellant alleges recorded appellant's statement), (5) permit appellant to testify about his statement given to Dunsky, and (6) permit appellant to call Dunsky as a witness.

**{¶29}** Appellant contends the trial court erred when it affirmed the decision to not order interviews of all potential witnesses. In other words, appellant appears to argue that appellee deprived appellant of due process when it did not call every potential witness. However, as appellee points out, the identities of the student witnesses were available to appellant. Moreover, appellant

---

[2] Appellant and the trial court refer to appellant's interview with Dunsky as "under oath," but the record does not confirm this designation.

cites no authority to support his argument that ODE is required to interview or to call every potential witness in its case-in-chief.

{¶30} Appellant's other arguments relate to what the hearing officer and trial court concluded constitute R.C. 3319.311 confidential investigative records. Appellant asserts that the failure to (1) produce appellant's initial statement to ODE Staff Attorney Samuel Dunsky as an exhibit, (2) permit him to subpoena Dunsky (who recorded the statement), (3) permit appellant to testify about his "under-oath statement" to Dunsky, and (4) permit appellant to call Dunsky as a witness all constitute reversible error.

{¶31} The trial court, however, concluded that the subpoenas could properly be quashed and noted that "[t]he ability to limit or quash subpoenas must necessarily be inferred from the power to issue subpoenas '[f]or the purpose of conducting any adjudication hearing.'" *Clayton v. Ohio Bd. of Nursing*, 147 Ohio St.3d 114, 2016-Ohio-643, 62 N.E.3d 132, ¶ 33, citing R.C. 119.09. The court agreed with the hearing officer's conclusion that appellant's statement made during ODE's investigation are confidential pursuant to R.C. 3319.311(A)(1), which provides: "Except as provided in division (A)(2) of this section, all information received * * * and all information obtained during an investigation is confidential

and is not a public record under section 149.43 of the Revised Code." In addition to R.C 3319.311(A)(1), the Ohio Administrative Code contains two regulations that speak about subpoenas for confidential department records. Ohio Adm.Code 3301-73-13(F) and (I) state: "(F) Upon motion and for good cause, the hearing officer may order any subpoena be quashed. * * * (I) Respondents do not have the right to request the superintendent to issue subpoenas for the department's records that are confidential under section 3319.311 of the Revised Code." Finally, Ohio Adm. Code 3301-73-04(A) provides that with certain exceptions, "[a]ll information obtained during an investigation is confidential and is not a public record under section 149.43 of the Revised Code * * *."

**{¶32}** "'An Ohio Administrative Code section is a further arm, extension, or explanation of statutory intent implementing a statute passed by the General Assembly.'" *Belinky v. Drake Ctr., Inc.,* 117 Ohio App.3d 505-506, 690 N.E.2d 1302 (1st Dist.1996), quoting *State ex rel. Meyers v. State Lottery Comm.*, 34 Ohio App.3d 232, 234, 517 N.E.2d 1029 (6th Dist.1986). Further, a rule implemented as an extension of a statute has the full force and effect of a statute unless it is unreasonable or conflicts with a statute that covers the same subject matter. *See Washington Cty. Home, supra,* 178 Ohio App.3d 78, 2008-Ohio-4342, 896 N.E.2d 1011, ¶

37, citing *State ex rel. Celebrezze v. Natl. Lime & Stone Co.,* 68 Ohio St.3d 377, 382, 627 N.E.2d 538 (1994).

**{¶33}** In the case sub judice, the trial court observed that appellant attempted to subpoena the investigation attorney in order to elicit evidence concerning appellant's prior statement. The court concluded, however, that the decision to grant the motion to quash the subpoenas for Attorney Samuel Dunsky and State Board of Education Superintendent Paolo DeMaria could be deemed to be R.C. 3319.311 confidential material. Consequently, the court concluded that quashing the subpoenas and failing to disclose the investigative material did not deny appellant a full and fair hearing. The court further observed that the hearing officer heard testimony from 7 witnesses and admitted 19 exhibits. The witnesses included three students who observed the incident, appellant, and Principal Franke, who investigated the incident for the local school district. The court pointed out that the hearing officer apparently found the testimony of the students and Franke more credible than appellant's testimony, and that the court must accept the hearing officer's credibility determination. *Sohi v. Ohio State Dental Bd.,* 130 Ohio App.3d 414, 424, 720 N.E.2d 187 (1st Dist.1998) (trial courts give due deference to board findings

concerning conflicting testimony and must not substitute own judgment for credibility determinations).

**{¶34}** Thus, the trial court determined that, based on the parties' briefs and arguments, "reliable, probative, and substantial" evidence supports ODE's decision and is in "accordance with law." The court concluded that R.C. 3319.311 protects as confidential investigative material the material appellant sought. Although administrative rules prevent obtaining those records in an administrative hearing, the court opined:

> In the review of this matter, it is troubling the ease with which the Department may use one statement of Bennett obtained in its investigation which is damning and suppress another statement by Bennett which is beneficial, albeit of slight worth given the length of time between the incident and when the statement was given. However, that is the system created by the General Assembly, which makes investigations of this nature confidential.

**{¶35}** In general, the primary goal of statutory construction is to determine and give effect to the General Assembly's intent in enacting the statute. *Brooks v. Ohio State Univ.*, 111 Ohio App.3d 342, 349, 676 N.E.2d 162 (10th Dist.1996). Appellate courts first look to a statute's plain language and apply it as written if the meaning is unambiguous. *Beckett v. Warren,* 124 Ohio St.3d 256, 2010-Ohio-4, 921 N.E.2d 624, ¶ 15, citing *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9. *See also Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954,

846 N.E.2d 478, ¶ 52, *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996); *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (1997).

{¶36} Here, the language in R.C. 3319.311(A)(1) is clear - all information obtained during ODE's investigation is confidential. The Ohio Administrative Code makes it even clearer - Ohio Adm.Code 3301-73-13 allows a hearing officer to order any subpoena quashed, and Ohio Adm.Code 3301-73-04 echoes R.C. 3319.311(A)(1) in that all information obtained during an investigation is confidential. Although we understand and appreciate appellant's and the trial court's disdain for this particular procedure, as the trial court stated courts must apply the law as written. "[T]he General Assembly is responsible for weighing [policy] concerns and making policy decisions; we are charged with evaluating the constitutionality of their choices." *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 113; *Groch v. Gen. Motors. Corp,* 117 Ohio St.3d 192, 2008-Ohio-546, 833 N.E.2d 377, ¶ 212. R.C. 3319.311(A)(1) is not ambiguous. Here, the statute unambiguously provides that the investigative records appellant sought are confidential records. Although some may not

SCIOTO, 21CA3948

agree with a statute's content, the legislature, within the constitutional framework, determines policy concerns.

**{¶37}** Therefore, based on the foregoing reasons, we conclude that the trial court did not abuse its discretion and we overrule appellant's first assignment of error.

II.

**{¶38}** In his second assignment of error, appellant asserts that the trial court erred in its determination that ODE's decision did not violate appellant's substantive due process rights.

**{¶39}** Notice and an opportunity to be heard is a fundamental requirement of due process. *Griffin v. State Med. Bd. of Ohio,* 10th Dist. Franklin No. 11AP-174, 2011-Ohio-6089, ¶ 22; *Corn v. Ohio State Med. Bd.*, 61 Ohio App.3d 677, 684. 573 N.E.2d 1100 (10th Dist.1988). With regard to the case sub judice, R.C. 119.07 requires the State Board of Education to provide appellant with sufficient notice of the charges against him. *Geroc v. Ohio Veterinary Med. Bd.*, 37 Ohio App.3d 192, 199, 525 N.E.2d 501 (8th Dist.1987). In addition, the right to a hearing includes the right to appear at the hearing prepared to defend oneself through testimony, evidence, or argument against the charges brought. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Sohi*, 130 Ohio App.3d at 422;

*Johnson v. State Med. Bd. of Ohio*, 10th Dist. Franklin No. 98AP-1324, 2000 WL 192374 (Sept. 28, 1999). Thus, an administrative agency cannot revoke or suspend a professional license without safeguarding a respondent's statutory and due process rights. *Sohi*, 130 Ohio App.3d at 422.

**{¶40}** Interestingly, the rules of civil procedure do not apply in administrative proceedings. "Something less than a full evidentiary hearing is generally sufficient in an administrative action." *Froug v. Ohio Bd. of Nursing,* 10th Dist. Franklin No. 00AP-523, 2001 WL 82926 (Feb. 1, 2001), *3, citing *Johnson supra.* An administrative board meets "its duty as to 'discovery' by supplying [a licensee] with sufficient information enabling him [or her] to properly respond to the charges." *Carratola v. Ohio State Dental Bd.*, 9th Dist. Summit No. 18658, 1998 WL 225033 (May 6, 1998), quoting *Miccichi v. Ohio State Dental Bd.*, 5th Dist. Tuscarawas No. 86AP-080063, 1997 WL 11070 (May 4, 1987). *See also Froug, supra,* at 3, citing *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 555 N.E.2d 630 (1990), paragraph one of the syllabus; *State Med. Bd. of Ohio v. Murray*, 66 Ohio St.3d 527, 535, 613 N.E.2d 636 (1993).

**{¶41}** Appellant points to *Sohi*'s admonition that "[p]rocedural due process also embodies the concept of fundamental fairness."

*Sohi,* 130 Ohio App.3d at 422. *Sohi*, however, holds that due process requires an agency to provide a respondent with sufficient notice of the charges and an opportunity to be heard. *Id.* In the case at bar, the notice appellant received included specific allegations and a confidential key that identified the witness. In addition, the notice provided the names of the other witnesses in a supplemental confidential key. At the hearing, appellant had the opportunity to cross-examine ODE witnesses and to provide his own testimony and exhibits. Thus, appellant did receive notice and the opportunity to be heard.

**{¶42}** Appellant further asserts that appellee prevented him from subpoenaing Ms. Canter, the regularly assigned teacher, and that *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) holds that due process requires a "timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Id.* at 267-268. Our review of the record, however, does not support appellant's contention that appellee prevented him from subpoenaing witnesses, other than the agency's investigation attorney and staff attorney.

{¶43} In the case sub judice, ODE sent a Notice of Opportunity for Hearing to appellant to notify him that the Board intended to determine whether to limit, suspend, revoke or permanently revoke his five-year substitute career technical license. Although ODE notified appellant it would present evidence on five claims, it later amended its notice to remove the fifth claim. The notice further informed appellant that his alleged misconduct violated R.C. 3319.31(B)(1) and notified him he was entitled to a hearing if he so requested. Our review reveals that appellant did receive the due process protections generally afforded in administrative agency proceedings. While everyone may not agree with every aspect of the truncated nature of the administrative agency determination process in Ohio, once again this is the particular system that the legislature has chosen to implement.

{¶44} Accordingly, based upon the foregoing reasons, we agree with the trial court's conclusion, overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGEMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed. Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.